Rollins, S.-
The proceeding brought by Evan J. Henry for revoking the probate of this testator’s will is about to be terminated by a decree denying the petition for revocation and confirming the probate. By that decree certain costs and counsel fees will be awarded the proponent, and provision will be made for compensating the services of the special guardian of James Griffiths Henry, Jr., the infant son of the testator.
Shall these costs and allowances be directed to be paid out of the estate, or shall they be charged in whole or in part to the petitioner ?
Section 2558, of the Code of Civil Procedure provides that, save for certain exceptions with which we are not here concerned, costs shall not be awarded out of a testator’s estate, or otherwise, to one who unsuccessfully opposes the probate of such testator’s will, or strives unsuccessfully to have such pro *345 bate revoked. The award of costs in probate proceedings to any party not within this inhibition is regulated by the general provisions of section 2557. “ Such costs,” says that section, “ may be made payable by the party personally, or out of the estate or fund as justice requires.” The evident intent of the Legislature in absolutely forbidding the surrogate to reward out of a testator’s estate an unavailing opposition to the establishment of such testator’s will, is very manifest. For ten years prior to the enactment of the present provision of the Code this court had been vested with such large discretionary authority as regarded the allowance of counsel fees in will controversies that however wisely and justly.such authority was sought to be exercised, the fact that it could be exercised at all was provocative of reckless litigation. But the Legislature while recognizing by its adoption of section 2558, the mischief of the system of costs and allowances by that section abrogated, has not seen fit to direct that by the mere'act of fruitlessly resisting the probate or confirmation of probate of a will, a suitor not only forfeits all claim to the discharge of his own costs out of the funds of the estate, but becomes necessarily chargeable also with all other costs attending the controversy. It is apparent therefore that, in the contemplation of the Legislature, cases may arise in which an unsuccessful opponent of a will would be treated unjustly if required to bear the entire burden of costs upon his own shoulders. It has been the practice of the present surrogate to refuse so to condemn a defeated contestant, unless by the disclosures of the trial itself, or by some other means, it has been made to appear that such contestant has acted mala fide or vexatiously, and without grounds of opposition which might reasonably have seemed to him to be fair and just. A defeated contestant should doubtless be charged with costs where his resistance has been wanton or malicious or clearly unfounded, but not with a resistance based upon what, from his standpoint, may have seemed proper and necessary in the interests of justice, and for the due protection of his rights. This is a proposition which seems to me to be supported by Broadbent v. Hughes, 29 L. J. P., 134; Summerrell v. Clement, 3 Sw. & Tr., 35; Robins v. Dolphin, 1 Sw. & Tr., 518; Nichols v. Binns, Id, 239; Seaton v. Sturch, 20 L. J. P., 195; Mitchell v. Gard, 3 Sw. & Tr., 75.
The question of charging costs to a defeated contestant is one which addresses itself to the sound discretion of the court. It is in the very nature of things impossible that the exercise of this discretion can be controlled by any precise and definite rule. “No positive regulation could be established,” said Wilde, J., in the case last cited, “ that would bear the strain put upon it by the justice or hardship of particular instances. * * * But if there be sufficient and reasonable ground, looking to the *346 knowledge, or means of knowledge, of the opposing party, to question either the execution of the will or the capacity of the testator, or to put forward a charge of undue influence or fraud, the losing party may properly be relieved from the costs of his successful opponent.”
This seems to me to be a sound and sensible doctrine. For, as the learned judge points out, it is in the interests of justice that doubtful wills should not pass unchallenged to probate merely because a contest, in case it should prove unsuccessful, would entail upon the contestant a grievous burden of costs; while on the other hand, it is equally in the interests of justice that persons should not be tempted into unwarrantable will controver, sies by reflection that however such controversies may result-the attendant expense is sure to be defrayed, in whole or in part, out of the funds of the decedent’s estate.
Now, under what circumstances does this question respecting costs arise in the case at bar?
The proponent of this will, who was formerly the wife of one Simmons, obtained a divorce from him in' December, 1881. In January, 1882, she was married to this testator,-who died in 1888, leaving one child the fruit of such marriage. In October, 1888, the testator’s will was admitted to probate in this county. Within the year then next ensuing, the petitioner (father of the testator) commenced this proceeding for revocation of probate, charging, among other things, that the proponent by the exercise of fraud and undue influence had procured the making and execution of the will, and alleging also that James Griffiths Henry, Jr., was not the son of the testator and his next of kin, and that the- proponent was not the testator’s lawful wife, but that at the time of her marriage to the testator, and at the time of his death, she was the lawful wife of one Simmons, and that the degree of the supreme court, by the provisions whereof she had been divorced from Simmons, was fraudulently and collusively procured, and was therefore invalid and of no effect. The petitioner insisted that he was himself his .son’s only next of kin, and that he was entitled as such to dispute the validity and legality of the will. In November, 1885, the surrogate directed that the preliminary issue as to the status of the petitioner, the validity of the proponent’s marriage to the decedent, and the legitimacy of their infant son, should be presented and determined before the petitioner could be permitted to attack the will. This direction was adhered to in December, 1885, when a motion was made in behalf of the petitioner that all the issues “ be heard and passed upon together, and not separately.” At the same time the surrogate denied an application of the petitioner for an order directing the examination by commission of certain witnesses who it was claimed could give material testimony tending to show that the proponent was not the dece *347 dent’s widow. These decisions were put upon the ground that the petitioner could not, in the revocation proceeding, be allowed to impeach the validity of the decree by winch the proponent was divorced from Simmons, except by evidence showing that the court in which that decree was entered was without jurisdiction to pronounce it. And it was held further that the petitioner could not be allowed to offer evidence tending to impeach the marriage between the decedent and the proponent upon the ground of any force, duress or fraud employed by the latter in bringing such marriage about. The petitioner appealed from the order denying the application for the issuing of commissions and from the order denying the motion to try the issues simultaneously. It was claimed by his counsel that those appeals operated as a stay of proceedings ; but the surrogate held otherwise, and directed that the trial of the preliminary issue should proceed. The petitioner thereupon entered into a stipulation that in the event of the affirmance of the orders in question or the dismissal of the appeals, a decree denying his petition should straightway be entered.
. Subsequently the appeals were abandoned, and the petitioner now interposes no obstacle to the confirmation of probate. The affidavits submitted by his counsel to support his protest against the proponent’s claim that he should be condemned in costs, satisfy me that the petitioner verily believed and had reasonable ground for believing that his contest of the will might be successful. He was advised by eminent counsel that in the revocation proceeding he could cause an inquiry to be instituted into the validity of the proponent’s divorce from Simmons, and her subsequent marriage with the testator, and that the probable result of that inquiry would be the ascertainment that the testator had never been lawfully married. I have held that the counsel who gave this advice were mistaken in believing that the Simmons divorce could be here brought in question. If I had held otherwise it is possible that the petitioner might have succeeded in establishing his status as contestant, and might also have succeeded in his opposition to the confirmation of probate. It would be treating him harshly to mulct him in costs for following the advice of counsel who were, I doubt not, persuaded that his contention was just, and would be sustained by the courts. He is charged with bad faith in altogether failing to substantiate the allegation of his original petition, that even if the marriage between the proponent and the decedent were concededly valid, James Griffiths Henry, Jr., was not their son. The slender basis for making the allegation was probably the statement in Mr. Keasby’s letter of June 13, 1884, that he (Mr. Keasby) “ thought evident ” from his interview with Mr. Lowell, “ that the child was bogus and the whole matter of issue a part of the infamous conspiracy against your ” (the petitioner’s) “ son.” *348 Tbe petition was verified on tbe 17tb of October, 1884, and it may well be that the petitioner then believed Keasby’s suspicion to be well founded and afterward discovered that it could not be substantiated.
Tbe allegation ought not to have been made ; but tbe petitioner’s offense does not merit the penalty with which I ■ am asked to visit it. My conclusion upon the whole case is that such costs and allowances as may be awarded should be paid out of the funds of the estate.